Will the attorneys who are going to argue the case please approach the podium, identify yourselves and the party you represent, and indicate to us how much time you want to reserve for rebuttal. Good afternoon, your honor. Ben Thompson. I'm here for the plaintiffs and I'll reserve three minutes of my time for rebuttal. Very well. Good afternoon, your honors. Daniel Warren on behalf of Advocate Health Care. Okay. Mr. Thompson. Good afternoon, your honors. May it please the court. My name is Ben Thompson and I'm here today representing the plaintiffs in this matter. Your honors, this case presents a classic case for alternative pleading. Each of the main plaintiffs here allege that they paid the defendant, Advocate Health Care Hospitals, for data security protection in addition to any health care services they receive. But because there's an ongoing dispute about whether those data security services were covered under Advocate's contractual obligations, the plaintiffs allege alternative claims for breach of contract and unjust enrichment. And on the facts alleged here, there's ample support for both counts. So turning first to the breach of contract side of the equation, each of these main plaintiffs when they first presented to Advocate Health Care Hospital, they were required to make two promises. First, they were required to promise to pay for all services that they received. And second, they were required to promise to relinquish control over their confidential health information. Those facts form the core of the two contract claims that are presented to this court, and that's the express contract claim and the alternative implied contract claim. So from the express side of things, each of these main plaintiffs was also presented with a document at the time that they were first presented to the hospital. That's the Notice of Patient Privacy document. That's referenced in the pleadings and attached to it as an exhibit. And at the first substantive page of that document, it says right near the top that Advocate is committed to protecting its patients, these plaintiffs, medical information. And it's that phrase, that commitment to protect their medical information that underlies the express contract claim here. How do you respond to their position on what commitment means, that it's not an enforceable word? Well, sure. That's a great question, Your Honor. From my review of the briefing, I think there's two issues there. One is what does the term commitment mean, and I think what Advocate focuses more strongly on is what does protect mean. And so in terms of commitment, this Court has said time and time again, as has our Supreme Court, that when you're faced with a word in a contract, you have to go to the dictionary. Commitment essentially means to promise. It means to oblige or to commit oneself to a course of action. And so here the term commitment stated in this document, again presented to each of the plaintiffs here, and one that they were required to sign an acknowledged receipt of, is essentially Advocate promising to do something. And what it was promising to do was, as the document says, protect their medical information. Now, as I just noted, one of Advocate's main positions here is that protect by itself is too indefinite to form any sort of contractual promise. But I don't think that's the case, Your Honors, because, again, when we look to the dictionary, protect also has a straightforward meaning. It means to safeguard. It means to protect from attack. And that's essentially the express contract claim that we're alleging here. And it's that same claim, or a similar one, that has been examined and endorsed by a number of federal courts that have overseen data breach cases like this one. We cite to a number of those in the briefing. I won't go through all of them. But one that I will point to, just because it was analyzed under Illinois law, is the Damage case. Again, that one was one that was litigated in the Northern District of Illinois, applying Illinois law. There was also a promise there contained in another analogous privacy document. And while the promise of protection there did have some more detail, there was a discussion of technical safeguards, for example, it didn't go into any detail about, okay, so what does technical safeguards mean? And there's no reason why the court there found, again, under Illinois law, those terms were enough to give rise to a contractual obligation on behalf of the defendant. And sure, in this case, that the word protect here can't give rise to a contractual promise on behalf of advocate here. In fact, the level of granularity that advocate is suggesting is required, that we not only discuss things like encryption, but perhaps the level of encryption and other safeguards. That level of detail just isn't required under the cleaning standards in Illinois law for a breach of contract claim. And again, that's the building that's at the center of a number of data breach cases that have made their way through the federal courts. How do we know when there's a breach, then, if we don't know what they're supposed to do, other than these generic terms of protect and commitment to do things correctly? Well, sure, Your Honor. The answer is we just have, again, look to the contract that says protect, and we just have to ask, okay, given the facts alleged, did advocate, in fact, take steps to protect these plaintiff's information? And while it doesn't, again, it doesn't spell out every single step that advocate should have taken or had to take in order to live up to its obligation, the facts here are such that the court can look at that single word and say that, yeah, under the facts alleged here, advocate did not follow through on its duty to protect these plaintiff's information. How do you respond? And this may be similar to Justice Griffin's question, but I'm looking for something different. They're taking the position that there may be this document that you referred to that all of your clients have signed where advocate advises them that they're going to protect the privacy of their information. The appellee seems to believe that that's different from data security. And how do you respond to that? Well, Your Honor, I agree with you that there can be a difference between privacy on the one hand and protection on the other. And, again, I want to focus that. Our focus here is on that word protection. As you go through the document, the Notice of Privacy Practices document, you'll see a lot of discussion about advocate requiring that its employees not disclose patient information unless it's necessary for treatment purposes, that sort of thing. There's also a reference a little bit further down on that first page to advocate noting that it has legal obligations to protect the privacy of plaintiff's information, and those largely come from HIPAA. And one thing that advocate did say in its opposition papers here is that what it intended that document to fulfill, to accomplish, that Notice of Privacy Practices document was to fulfill certain obligations it had under federal law, under HIPAA. But that intense advocate's desire that that document satisfy those requirements aren't what's relevant to an express contract claim. Rather, the court has to look at the words on the page. And here, at the beginning of the document, the word protect is there, and that stands in contrast to the ongoing discussion of what advocate seems to me to mean by patient privacy as it's going forward.  Which is that the plaintiffs here aren't trying to enforce a federal law without a cause of action. I'm referring to HIPAA specifically. It's what advocate raises in its opposition papers. Rather, what's being enforced is this written promise, this general promise to protect patient data. And no surprise, that's a concern that's come up in just about every data breach case that involves either a hospital or a health insurer, is whether the plaintiffs are attempting to enforce a federal law without a cause of action. I'm just a little confused. Maybe this doesn't even matter. But on page 7 of the complaint, advocate violated HIPAA, the MPRA, PIPA, industry standard. That's what you have here. But yet you're not alleging that that violation is the basis for your claim, right? That's right, Judge. There can be overlap. There's nothing wrong with a common law cause of action here for breach of contract to have overlap with what's required under federal law. But the requirements of what advocate had to do under the written promises it made and what it was required to do under federal law aren't coextensive. They're not the same thing. And by making this broad promise to his patients, which, by the way, advocate didn't have to put in that notice of privacy practices document that I'm referring to now, by making that express representation to his patients and accepting consideration for that promise, it can still stand as an enforceable promise here, notwithstanding that it has obligations under federal law or state law, that sort of thing. Well, are you asking for a refund or restitution or rescission or what? Well, from the perspective of the breach of contract side of things, Your Honor, there's two forms of damages we're asking for. And it's worth noting here that the parties are in accord, that if this court finds that advocate, in fact, had a contractual obligation, whether expressed or implied, to protect these plaintiff's information, they should state a claim here because each alleges resulting damages from advocate's alleged brief. And by that, I mean their identity theft damages, the fact that their information was used to open fraudulent accounts. But there's one set of plaintiffs. What about your overpayment or your copayment classes? Sure. Well, in terms of the issue that's before this court right now, we're just dealing with these three main plaintiffs, Greg Krasik, Irma Babra, and Markito Cook. And each of those plaintiffs alleges identity theft damages. So they all fall into the same bucket.  They also state and allege adequate contract damages just by virtue of the identity theft that they allege. Now, they also allege the benefit of the bargain damages that are discussed in the brief, too. And those are also enough to state a claim for a breach of contract. And that just relies on the principle that's been stated by Illinois courts. But what damages are you seeking for any one of the three classes? I thought you're seeking a refund of that portion of your fee for services that should have gone toward security. Sure. So if you paid $100 for a flu shot, some portion of that $100 was supposed to go towards, as the defendants point out, parking lot maintenance, providing parking spaces, and security. So how do you get to that damage? Isn't that putting you in a better position than you were originally? Well, I've got two things to say in response to Your Honor's question. So first of all, it's true that the complaint does allege classes that are centered around those kind of overpayment or benefit of the bargain damages. But in terms of whether or not these three plaintiffs state a claim, it's not necessary to reach that question. But moving forward in the case, assuming the case does move forward, that will be addressed. The second half of Your Honor's question kind of gets to an argument that advocate raises against the idea of benefit of the bargain damages. And that's if this court or any court lets those kind of damages go forward, then what's to stop any plaintiff from complaining about soap in a hospital room or pristine parking lots? And I think there's an easily identifiable and important difference between the kind of damages alleged here and those kind of hypotheticals. And that's that data security in this day and age where a hospital system or health insurer relies on electronic medical records is an important and critical part to every patient's interaction with a hospital or health care provider, or even when just presenting for a flu shot. It requires at each turn that a plaintiff surrender control of their information. It gets imported into a computer. And several courts have noted that that interaction, standing alone, is enough to give rise to implied agreements on one side to provide the information and on the other side to protect it. And that's kind of gesturing toward the implied contract claim that we have here. But in this case, we also have the express promise to protect it. And so to bring it back to your other question about the issue of damages, we're not trying to recover here the incidental aspects of these plaintiffs' interaction with the hospital. Rather, we're focusing on one material aspect of each plaintiff's interaction with the hospital. And so the material aspects that we're focusing on here are, one, health care. That's acknowledged that that is part of the underlying contract, but we're not trying to recover part of that. And the second half is what are you trying to recover? Well, so here, point one is the resulting damages. Point two is the expectation interest that each plaintiff had in receiving health care services that had adequate. You have a contract claim, express or implied, that wasn't complied with, taking your complaint to the best leg. So what's the damage? Well, the damage here, again, from the. . . What's the contract damages? It would be the difference in the value between the service that the plaintiff's bargained for, health care plus data security, against the value of the services that the plaintiff's received. And that's just health care. Okay, so that amounts to $5. You get $5 back for your claims, right? Is that proper contract damages? Is that putting them in the same spot they would have been in had the contract been performed? I think in this case, well, whether or not it's. . . I realize your honor is kind of using $5 as a hypothetical amount, but assuming that's what discovery shows is the difference in value, then yes, that's the expectation damage. And that articulation of damage has been accepted by several federal courts that have examined this situation under analogous state laws. Is the fact that encryption is free? It's free? That's what it said in the briefs a couple times. So how does that figure out? Well, sure, it's free, but in terms of . . . So it's free to . . . It's free for an advocate to use. It's free for anyone to use. But in terms of why that has a value, advocates still has to pay to have it implemented. It has to pay to have it maintained. It has to pay its staff to get up to speed on how to use it. These are all reasons why, even for data security practices that are cheap or free, there's still a cost to them. And that's what plaintiffs are paying for when they're interacting, or what these plaintiffs were paying for when they were interacting with the hospital. And . . . Let me just say that we're clear, though, these three plaintiffs that we're speaking of in this case, they're not necessarily similarly situated to everybody, to the whole class of plaintiffs, because they do have identity theft damages. Sure, Your Honor. I think in that regard, there is going to be a difference between aspects of their claim and everyone's claim. So when you look across the class as a whole, right, you have folks that suffered identity theft, like these three plaintiffs here, and these three plaintiffs . . . Those that didn't. That's correct. So in this case, clearly, damages have been alleged. Even if you just look at the identity theft damages, you don't necessarily have to get to the benefit of the bargain or the expectation damages or any other kind of damages. That's correct. Damages are clearly in this case. Do you agree? I agree with you completely, Your Honor. And then in terms of what's the relationship between these three plaintiffs to the remainder of the class, well, that's where the benefit of the bargain damages come in. But those aren't really necessary to reach here for the purposes of the decision in front of this Court. I'm with you. Okay. I'm glad. I did want to speak quickly about the formation. I gestured towards it, but the formation of the implied contract claim. Here, there's a number of things to point to. You have the facts. I mean, the leading thing to point to is the fact that advocate required that each of these plaintiffs surrender control of their health information when they came to the hospital. The Castillo case that we cite to in our brief, that's one out in California. And the Sacken case from the 7th District of New York have, I think, pretty strong articulations about why that relationship arose, a relationship where in the setting of a contract being formed, you have one party requesting and another party providing health information. It's sufficient to give rise to an implied understanding that the receiving party is going to take steps to protect the information. And even if that was not enough, Your Honors, there's allegations in the complaint here that evidence the state of mind of both parties and show that they were in sync on this issue. The plaintiffs allege that they wouldn't have provided their confidential information without an understanding that advocate would protect it. And then on behalf of the advocate, you have things like the nurse of privacy practices document, the other documents they had on their website, and their public representations, particularly that were made after the November 2009 data breach, showing that it was, in fact, going to take steps to protect patient data. And that leaves the alternative unjust enrichment claim, Your Honors. The main issue here seems to be that there's always going to be tension between an unjust enrichment claim when all the parties acknowledge that there is, in fact, a contract issue here. But that doesn't prevent these plaintiffs from pleading the unjust enrichment claim in the alternative because if the briefing shows anything, it shows that whether or not data security was a part of the underlying contract is at issue. And the payments for data security, that's what's referenced in the unjust enrichment claim. And so if the court eventually finds that advocate, in fact, had no contractual obligation to protect these plaintiffs' medical information or those aspects of the contract that did apply to data security are unenforceable because of some preexisting legal duty, something like that, the fact that these plaintiffs so urged they paid money for those services but didn't receive them, that setting alone is sufficient to support a claim for unjust enrichment. If Your Honors have no further questions, I'll take my seat. Very well. Thanks. Good afternoon, Your Honors. Daniel Warren on behalf of ADVICA. Each of the three claims that are asserted here, express contract, implied contract, and unjust enrichment, is a transparent attempt to enforce HIPAA, even though HIPAA does not provide a private right of action. I'd like to start with a basic principle of Illinois law that I think the parties agree on, and that is you can find it at page 25 of Plaintiff's Opening Brief. Under Illinois law, the proper measure of contract damages is to put the parties in the position they would have been in had the contract or alleged contract been performed. And by seeking to recover a portion of the fees they paid to advocate, plaintiffs are, in fact, doing the opposite of that. They're not putting the parties where they would have been had the contract been performed. They're putting the parties where they would have been had that alleged agreement never been made to begin with, and the money is then returned. By seeking to recover a portion of the fees, as they're trying to do under their overpayment theory, they're not seeking the benefit of the bargain, which is the phrase we just heard more than once. They're actually doing the opposite of that. They're undoing the bargain, or at least they're trying to undo that portion of the bargain that they contend related to data security. That is not contract damages. It is restitution, and, in fact, it's partial restitution, and it's contrary to Illinois law, and the cases say as much. The parties have cited central diversity, which is a federal case applying Illinois law, in which the court refused to give the very kind of relief they're seeking here, which is a return of fees. Why? Quoting Judge Kokoros in Central Diversity, because such a remedy is improper in breach of contract cases. The return of benefits conferred under a contract constitutes restitution, a remedy designed for ashes to rescind a contract. And this court echoed that very same principle in the Illinois bail case, also cited by the parties, where this court recognized that contract damages must be based on an injury that was suffered by the plaintiff, not on what the defendants may have gained from the transaction. So if they can establish damages under the identity theft claim, you don't have a dispute with them? Assuming they can establish a contract, which we do dispute. Right. Yes, we do that. If they can establish either an express or invite contract, then they have to prove damages as a result of the theft of the information. That would be an example of a proper form of contract damage. I was injured by your breach of contract. In this case, my identity was misused as a result of the theft of those computers. Well, explain to us why they have not pled. This is simply a pleading procedure right now. Right. 615, it's as basic as you can get. Do they have to plead a clause of action, either for an express or invite contract or for an adjustment of interest? Sure, Your Honor. And I think it's helpful in that regard to be mindful of the fact that they have a negligence claim below, which they voluntarily dismissed in order to pave the way to bring this appeal. Well, it's not liable. True. I think what we now have is a square path being tried to force into a round hole. Well, just so address my question, please. The notice of privacy, which is the basis for their express contract claim, is not even a contractual document. It is a HIPAA-required notice of their statutory rights under HIPAA, which incidentally don't provide for a private right of action. But more than that, it's a notice of their privacy rights, which I think I heard Counselor acknowledge are different than security rights. So that document doesn't relate to security. It relates to privacy, with the exception, the plaintiff says, of the statement that we are committed to protect your information. Commitment in that context is an aspirational statement. And this could help that in a different context, but also from a hospital who said we're committed to your health or something and well-being. I don't know if a bunch of married couples would agree with you on that, that it's all commitment, it's just an aspiration. Well, I mean, if you look at the Galveston Hospital case, Judge Walker, which was a Consumer Fraud Act case, the court had exactly that, where the statement is, well, we are committed to your well-being, that did not establish a contractual obligation. Similarly, in the Brabant case, also decided by this court, where the defendant was a nonprofit that says we are committed to pursuing our nonprofit objectives, that did not establish a contractual obligation, which prevented them from paying allegedly excessive bonuses to their executives. So commitment is an aspirational statement. It is an indefinite statement. And there really is nothing before this court that would allow this court to determine what exactly it is that plaintiff's claim advocate was required to do with regard to data security, except for their argument that you should simply apply all the requirements for data security under HIPAA. Well, in this day and age, with everything electronic and information flying all over the Internet, wouldn't you think that virtually everybody who is asked to provide sensitive information expects that if I give it to you, you're going to protect it and you're not going to allow it to be appropriated for purposes other than why I'm giving it to you? No. So rather than having everybody, okay, I agree to give you this and you agree to do that and shake on this and we're going to do all that, it's just the normal course of social interaction, especially between a patient and a medical facility. Not every expectation rises to the level of a meeting of the minds in a contractual agreement. And in many cases, when new kinds of duties are being considered by the court, whether under common law claims, negligence claims, or under things like implied contract, the proper answer, the way to resolve that is to look at the boundaries between what the judicial function is and what the legislative function is. And in fact, Congress has acted here through HIPAA, but has chosen not to provide a private right of action, but has developed a wide range of regulatory requirements and provided for ways to enforce those requirements which don't include a private right of action. And now the Illinois legislature in HIPAA has amended it subsequent to this case, so they're not relying on it and they can't rely on it, but now has recognized the duty to protect information. It's an interesting response from an industry that typically rails against regulation and says we're overregulated and let us be free and we'll provide these services in a more efficient manner and cheaper and less costly. Leave us alone. We know how to do it. But nonetheless, that is the dividing line between judicial and legislative functions. And, for example, in the CUNY appeal to this court, and that involved negligence claims as opposed to contract claims, the court said, look, we're not going to be, as an appellate court, the ones to decide that there is a duty in this area to protect information. HIPAA later, the legislature later responded with HIPAA. But I think that is the right way to resolve that issue. Then as far as implied contract goes, that's an individualized resolution of, for each patient who comes to the hospital, did they conduct themselves in a way from which we can imply that there was a meeting of the mind between them and the hospital? That would be a fact question if they had alleged sufficient facts to get there. But they don't have any allegations that suggest that any of the three main plaintiffs here, for example, had any awareness of any of the materials that they've identified on the hospital's website or in the notice of privacy that would otherwise support an implied contract. And in many cases, including in data privacy cases, the courts have said, if the plaintiffs can't allege that they were aware of commitments made by the hospital, that they were deceived by them or relied on them to their detriment, then we are going to find that the complaint states a claim for implied contract. And, in fact, Mary Pell Clubb's second district reached a similar conclusion outside of the health care contest in the Brody case, which was the admissions practices of the University of Chicago Medical School, where they said you have to have the plaintiff rely to his or her detriment on these commitments that are supposedly being made by the defendant in order for them to say that they have an implied contract, because they have to have the meeting of the minds. So, yes, it's a fact question, but there is a certain amount of factual allegation that needs to be in the pleading to support going to the next stage. But even if there is a contractual or sufficient facts here to support a contract, and even though, Judge Walker, you are correct that these three plaintiffs have alleged identity fraud damages, the class that they're purporting to represent here is, they still call it an overpayment class. And it's not limited to people who have identity fraud damages or claim to. It's everybody, all three million people whose names were on those computers, whether or not they suffered any actual harm from it. And while this bill certainly has the discretion to resolve that overpayment damage theory issue now, it's been fully briefed, it was decided by Judge Garcia very thoughtfully on the record twice, and each time he ruled that overpayment damages are not appropriate, and it's likely to be raised a third time if we go back to the circuit court. So it does make sense in our view for the court to address that now. If there are no other questions on that issue, I'd like just to address the unjust enrichment. The claim says that this is an alternative claim, and in a way, the alternative is that we all agree there's a contract here of some sort that governs the relationship between the parties. I'm a patient. I go to the hospital. I'm seeking treatment. You provide the treatment. I pay for that treatment. The alternative basis in which this claim arises for unjust enrichment is if, in the event, that contract does not contain a provision relating to data security. We have a contract to provide you medical services, but there's nothing in here about data security. That's the alternative basis in which this claim supposedly arises. But what they are seeking as relief is some of that money to be paid back to them. So in other words, if they go to the hospital and they receive treatment and they pay $100 for that treatment, but the contract doesn't provide for data security, then that $100 is already spoken for. It was for the treatment that they received, and there would be no basis to plunder that $100 for the $5 that allegedly should have gone to data security because that $100 was already contracted for. There was no unjust enrichment. There's no pled because the hospital only got that which it contracted for, which in this alternative scenario that we're operating in did not include any contractual commitment for data security. If the contract did provide for data security, then they have a contract claim, and they would thus win or lose based on that. But if it didn't, if the contract did not provide for data security, then the $100 that the hospital received was solely for the medical treatment. Isn't this a classic alternative pleading? Is this 615? It's not an alternative pleading, no, because under either alternative, unjust enrichment doesn't arise. If the contract provided for data security, it's a contract claim. I think we both agree on that, and not an unjust enrichment claim. But if the contract didn't provide for data security, you can't get unjust enrichment money back from the money you paid pursuant to a contract that didn't include data security. So, for example, in the Brush case, the court said, we're going to dismiss an unjust enrichment claim exactly like this one in the context of health care as a matter of law because the plaintiff did not allege, quote, that she conferred payment above and beyond the money owed for her medical treatment. So, again, in the hypothetical event that the contract didn't require any data security protection, then they have to allege that we didn't just pay for our medical treatment, we gave them some extra money. And they haven't alleged that. They can't allege that. And as a result, just as in Brush, that claim should be dismissed. There's another case that reached the same result. It's called Jimmy John's. It's a federal case, another data security case against Jimmy John's. And the central district of Illinois there said, oh, and the plaintiff paid for food products. She did not pay for a side order of data security and protection. It was merely incident to her food purchase, as is the ability to sit at a table to eat her food or to use Jimmy John's restroom. And the same is true here. Yes, plaintiff is arguing that data security is important. So is physical security. But no one is contending that there was a contract here or unjust enrichment for any payment made for physical security. So imagine a hypothetical, an analogy, if you will, of a hospital that didn't provide adequate physical security. And an unauthorized person entered the premises, went into a hospital room, and stole a patient's purse. Now that plaintiff, that patient, might have actual damages if her purse was stolen. But what about the guy in the next room where the broker didn't go in? Does he also have a claim for either overpayment damages or for unjust enrichment? According to plaintiffs, I think the answer would be yes. It would be hard to logically distinguish between the person in the next room whose room was not entered by the broker, but who nonetheless can say you didn't have adequate security so I should get some of my money back, and the great majority of their class that they designated an overpayment class who likewise did not have any actual damages. Thank you, Ash. Thank you. Can you just focus on the express and implied contract? I don't want to hear anything. We don't want to hear anything on the unjust enrichment right now. We want to focus on other issues. Sure. Absolutely, Your Honor. To that point, there's a few things that I would raise in response to what counsel just said. One is with regards to the express contract claim, right? As we discussed when I was giving my opening argument, there's two words at issue. There's commit and protect. There was some discussion that we just heard about what protect means here, and I think that what the parties have given this court are several examples where there are equally, using the term loosely, but equally indefinite terms that nevertheless can rise to the level of a contractual promise, and I think the King v. Ashbrook case is a great example of that. In that case, that was when I was in the Fourth District. The court examined the word repair. The word repair was stated by itself. The defendant there, like advocate here, argued that that term was too indefinite to be an enforceable contractual promise, but the court disagreed, and in doing so, it looked at the context of the parties contracting and said that what the defendant needed to do in that case was make repairs to a reasonable degree, and that's essentially what we're arguing here by saying that this hospital was committed to protecting patient data. What it had to do was take reasonable steps to protect the data, and the reason why your honors are seeing the word encrypt so often is because, as Justice Griffin noted, that measure of data security is free and readily available and is, in fact, industry standard, and that's why it's a part of the reasonable steps the hospital should have taken in this case to fulfill its contractual promise to protect these plaintiffs' medical information. Kelsey started out his argument talking a bit about the benefit of the bargain damages, and I think one other place that I'd say we're in agreement on is that Illinois law does not want to award plaintiffs claiming breach of contract a windfall recovery. We completely agree with that. I think a good case to look to is the Avery case that both parties discussed, that's Avery v. State Farm. In that case, there were two types of damages at issue before the court. One was what were called specification damages, and that, as your honors probably recall, was where State Farm instituted this policy of completing its promise to bring cars that had been in an accident to their pre-loss condition using aftermarket parts where they would save some money by doing so. The plaintiffs there said that that policy in and of itself, the intent to use aftermarket parts, was enough to give rise to contract damages, and the court disagreed, saying that, well, what about plaintiffs who fell under that policy but nevertheless had their cars repaired using original parts? How are they damaged? And the plaintiff there said, well, hold on. I don't have to tell you how they were damaged. They just were. And the court, of course, rejected that hypothetical. Our articulation of expectation damages are more like the installation damages from the case. We focus on individuals who paid for a particular service that had a particular value that, in fact, did not receive it. They weren't subject to a policy where maybe they would receive it or maybe they wouldn't. None of them received it, so they're all damaged in the same way, and that is what underlies the benefit of the bargain damages that we've been discussing today and shows why here we're not seeking a windfall recovery for any of the plaintiffs. And then in terms of the implied contract count, Your Honors, counsel suggested that there's nothing to point to in the pleadings to support that claim and instead focus on the fact that none of these individual plaintiffs plead reliance with respect to the notice of patient privacy documents or any of the other documents on the advocate's website, but they don't need to plead reliance to get their unjust, excuse me, the implied contract claim across the line here. And as Justice Pierce, as you noted, I think that largely arises because of the nature of the party's relationship, the fact that in this day and age with identity theft being so prevalent and the knowledge that when you contract with certain entities like hospitals or like health insurers, you have to surrender control of your information and no one would do so without an expectation that that information would be protected. And in terms of that expectation, that is alleged directly on page 2107 of the record where the plaintiffs all state that they would not have relinquished control of their confidential medical information without that understanding. And then the remainder of the documents, the ones that they don't plead reliance for, the work that those documents do is it shows that advocate had the same state of mind as the plaintiffs and, in fact, they were aligned in this regard. Plaintiffs were providing information with the expectation that it would be protected. An advocate was also receiving that information with the expectation that it would, in fact, protect it. So unless Your Honors have any other questions, I'll take my seat. All right. Thank you. We appreciate the efforts of everybody involved in briefing this issue. We will take the matter under advisement and stand in recess for about five minutes.